400

593 A.2d 14

James H. STEWART, Jr., Petitioner,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT
OF HEALTH, Respondent.

James H. STEWART, Jr.

v.

COMMONWEALTH of Pennsylvania, STATE HEALTH FACIL-
ITY HEARING BOARD, Grantham Woods, Inc. and Com-
monwealth of Pennsylvania, Department of Health, Petition-
ers.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 14, 1990.

Decided June 7, 1991.

Reconsideration Denied Aug. 14, 1991.

402

James H. Stewart, Jr., pro se.

Carol Brayshaw Longwell, Harrisburg, for respondent/petitioner, Dept. of Health.

Reed Hamilton, Philadelphia, for petitioner, Grantham Woods, Inc.

Before CRAIG, President Judge, SMITH, J., and SILVESTRI, Senior Judge.

CRAIG, President Judge.

James H. Stewart, Jr. (objector) petitions for review of an order of the State Health Facility Hearing Board (board) that affirmed the decision of the Department of Health (department) granting a certificate of need (CON) to Grantham Woods, Inc. (applicant) pursuant to the Health Care Facilities Act (Act).[1]  We affirm the board's decision.[2]

1. Health Care Facilities Act, Act of July 19, 1979, P.L. 130, *as amended,* 35 P.S. §§ 448.101–448.904.

2. This opinion was reassigned to the writer on April 12, 1991.

The applicant proposes to construct a continuing care retirement community (CCRC) adjacent to Messiah College in Cumberland County. The CCRC would include a 60 bed health care facility to provide skilled nursing care to its residents and, if beds are available, to individuals outside the community. The objector resides on land adjacent to the site of the applicant's proposed project.

Section 701 of the Act provides that

[n]o person shall offer, develop, construct or otherwise establish or undertake to establish within the State a *new institutional health service* without first obtaining a certificate of need from the department.

Section 701(a), 35 P.S. § 448.701(a). (Emphasis added).

For purposes of CON review, new institutional health services include the construction, development or other establishment of a new health care facility or health maintenance organization. Section 701(a)(1), 35 P.S. § 448.701(a)(1). Because the applicant's proposal falls within the statutory definition of a "new institutional health service," the applicant was required to obtain a CON from the department before proceeding with the project.

On September 13, 1985, the applicant submitted its CON application to both the department and to the local health systems agency (HSA). By letter dated November 13, 1985, the objector wrote to the HSA to enter his appearance as an objector to the applicant's CON application. On February 18, 1986, the HSA conducted a public hearing on the application. The board of directors of the HSA voted on March 13, 1986 to recommend denial of the CON and forwarded the application to the department for its review. On December 24, 1986, the Secretary of Health approved the applicant's CON application. The objector filed a notice of appeal with the board on January 26, 1987, challenging the department's grant of the CON to the applicant.

Both the department and the applicant filed preliminary motions requesting the board to quash or strike the objector's appeal on the grounds that (1) the appeal was untimely

filed and (2) the objector does not have standing to appeal. By order dated April 9, 1987, the board found that the objector's appeal had not been timely and granted the motion to quash. The board did not address the issue of the objector's standing to appeal.

The objector appealed the board's order to this court, which determined that his appeal was timely and remanded the matter to the board for further proceedings. *See, Stewart v. State Health Facility Hearing Board,* 117 Pa. Commonwealth Ct. 552, 543 A.2d 1290 (1988). On May 25, 1989, the board conducted a hearing on the objector's appeal. The board issued an opinion and order on August 29, 1989 which denied the applicant's and department's motions to strike the objector's appeal, affirmed the decision of the department to grant the CON, and dismissed the objector's appeal.

Stewart filed an appeal to this court (No. 1882 C.D.1989). The applicant, joined by the department, filed a cross appeal (No. 1964 C.D.1989) challenging the objector's standing before the board in the first instance.

The applicant and department contend that the objector lacked standing to appeal the department's grant of the CON application to the board and that this court should quash the objector's appeal. In the alternative, the applicant and department argue that the objector lacks standing to challenge the application.

The objector argues that substantial evidence in the record does not support the department's decision to grant the CON and that procedural and constitutional errors were committed during the application review process.

First, because the applicant and the department have appealed an interlocutory order of the board, that appeal (No. 1964 C.D.1989) must be quashed. Second, the objector has standing to challenge the department's approval of the application for a certificate of need (CON). Third, the department's decision to approve the CON application is

supported by substantial evidence and no prejudicial errors were committed. The department's decision is affirmed.

## 1. Nonappealable Order

■ The board's denial of the applicant and department's motion to strike Stewart's appeal is an interlocutory order and hence not appealable to this court. Accordingly, we quash the cross appeal filed by the applicant and department challenging that denial.

Generally, a party may take an appeal only from an order that is final, rather than interlocutory, in nature. Pa.R.A.P. 341(a). Final orders, for purposes of appeal, are orders that end the litigation or dispose of the entire case, effectively put a litigant "out of court," or preclude a party from presenting the merits of his claim. *Sweener v. First Baptist Church*, 516 Pa. 534, 533 A.2d 998 (1987); *Peoples Natural Gas Co. v. Pa.PUC*, 124 Pa. Commonwealth Ct. 59, 555 A.2d 288 (1989), *aff'd*, 523 Pa. 370, 567 A.2d 642 (1989).

In this case, the board's order did not end the litigation between the applicant and objector or put the objector out of court. Because the order explicitly kept the objector in the proceedings, it was clearly interlocutory. Unless expressly provided for by statute or rule, no appeal may lie from such an order. *Monzo v. Department of Transportation*, 124 Pa Commonwealth Ct. 360, 556 A.2d 493 (1989). Further, although the objector failed to move to quash the applicant and department's appeal from the interlocutory order, it is appropriate for this court to do so upon our own initiative. *Id.*

## 2. Standing

■ The applicant and department preserved the issue of Stewart's standing by arguing, in their brief on *his* appeal from the board's CON approval decision, that he lacked standing to appeal the department's decision.

For the reasons stated below, Stewart has standing to challenge the department's approval of the CON.

With respect to a decision of the department on an application for certificate of need, section 506(a) of the Act

provides that "any party ... who is involved in the proceeding" may appeal the department's decision to the board. Likewise, "any party ... who is involved in the proceeding" may appeal the hearing board's decision to this court. Section 507, 35 P.S. § 448.507.

Section 703(a) of the Act, 35 P.S. § 448.703(a), provides that persons who are "directly affected ... may file objections within 15 days of [publication of the notice of completed CON applications] with the local health systems agency setting forth specifically the reasons such objections were filed."

The board found that the objector filed timely and specific objections and that, because § 103 of the Act, 35 P.S. § 448.103, defines the phrase "persons directly affected" to include "members of the public who are to be served by the proposed new institutional health services," the sole issue was whether the objector was a member of the public to be served by the applicant's facility.

In this case, the department published a notice of the completed CON application in the *Pennsylvania Bulletin* on November 27, 1985. The objector filed his objections on January 31, 1986, more than 60 days later. Although we disagree with the board's finding with respect to the timeliness of the objections, the fact that the objector did not file timely objections is not controlling.

In *IFIDA Health Care v. Pennsylvania Department of Health*, 128 Pa. Commonwealth Ct. 634, 564 A.2d 535 (1989), this court held that the failure to file written objections within 15 days of publication did not prevent an objector from obtaining standing to challenge a CON application.

The *IFIDA* court first noted that the notice published in the *Pennsylvania Bulletin* merely indicated that the applicant proposed "to construct a new 120 long term care bed [sic] nursing home in Delaware County at an estimated cost of $5,714,704," but that the CON application was more than 155 pages in length. The court concluded therefore that the objector did not have sufficient information to file

objections within 15 days and that, while "early input is desirable ... if it is offered at the public hearing this is soon enough for the information to be seriously considered." *Id.*, 128 Pa. Commonwealth Ct. at 639, 564 A.2d at 538.

In this case, the notice stated only that Grantham Woods intends to construct a 60–bed long term care facility as part of a life care community at an estimated cost of $1,098,000. The application was more than 170 pages long. As in *IFIDA*, the notice published in the *Pennsylvania Bulletin* did not provide the objector with sufficient information to file meaningful objections within 15 days.

Although this objector did not file objections within 15 days, he did file objections before the February 18, 1986 public hearing. Under the *IFIDA* analysis, the objections in this case were filed soon enough before the public hearing for them to be properly considered.

Therefore, although the board's approach here differed from the *IFIDA* analysis, the board was ultimately correct in concluding that the sole remaining issue is whether the objector is a member of the public to be served by the applicant's proposed facility.

This court has not yet had the opportunity to interpret the phrase, "members of the public who are to be served by the proposed new institutional health services." However, in doing so, we must construe the words of the statute according to their plain meaning. "Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage." 1 Pa.C.S.A. § 1903(a) (Statutory Construction Act of 1972); *O'Neill v. Borough of Yardley*, 129 Pa. Commonwealth Ct. 270, 565 A.2d 502 (1989).

*Black's Law Dictionary* defines "member" as "one of the persons constituting a family, association, corporation, guild, court, legislature, or the like." 887 5th Ed.1979. *Black's* defines "public" as "the inhabitants of a particular place; all the inhabitants of a particular place; the people

of the neighborhood." 1104 5th Ed.1979. Combining these two terms, "member of the public" means one of the persons inhabiting a particular place. When applying this definition in the context of this case, the objector is indeed a member of the public to be served by the applicant's proposed facility.

In its application for the CON, the applicant referred repeatedly to the Cumberland County area, noting that the number of persons over sixty years of age has increased dramatically in recent years (R. 44a–45a). In fact, thirty-one percent of those persons on the applicant's mailing list (R. 67a) and sixty-nine percent of its applicants (R. 67a) reside in Cumberland County. The application also includes several charts listing the county's retirement centers and their populations as evidence of the need for the facility in the area (R. 69a–70a).

The objector resides in Cumberland County, immediately adjacent to the proposed facility. He is sixty years of age, an age which the applicant uses in many of its tables to determine the area's need for another retirement facility. Although the objector is in good health, the applicant's scheme for its facility specifically provides that most of its residents will be in good health when they move to the facility and, as the need arises, utilize its skilled long term facility.

The objector also alleged, in his answer to the applicant and department's original motion to dismiss his appeal to the board, that he was, in fact, solicited by the applicant as a prospective resident (R. 858a).

The applicant's proposed project is intended to serve the local community. This is evident from its application and its emphasis on the need for this type of facility in Cumberland County. The evidence supports the board's finding that the objector is a member of the public to be served by this project. Therefore, he has standing to challenge the application, and, hence, we will address the merits of his appeal.

### 3. Merits

Our scope of review in appeals from the Department of Health is defined in Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Section 704 requires that we affirm the adjudication of the board unless we find that the decision is not in accordance with law or that any of the agency's necessary findings of fact are not supported by substantial evidence. See *Department of Health v. Rehab Hospital Services Corp.*, 127 Pa. Commonwealth Ct. 185, 561 A.2d 342 (1989).

CCRC's are a recent innovation in the health care industry. They are unique because they are designed to serve the CCRC's own residents, rather than the general public. Accordingly, the need for a CCRC in a county or other limited geographical area is distinguishable from the need in the same area for another type of health care facility, such as a hospital. See Brief of Grantham Woods and the Department of Health at 8.

■ Because of this distinction, the department amended the State Health Plan (SHP) in 1986 by adopting Appendix 39–3A, "Standards and Criteria for Continuing Care Providers." State Health Plan, Appendix 39–3A, 16 Pa.B. 2177 (June 14, 1986). See R. 1268a–69a.

The amendment provides in pertinent part:

1. Certificate of Need applications for proposed long-term care beds associated with continuing care communities will be reviewed by the same standards and criteria that apply to other Certificate of Need applications for long-term care beds.

2. Additional long-term care beds will not be approved in areas for which there is no need according to the State Health Plan unless the applicant can meet all of the criteria in this Appendix.

3. In order to be considered under this Appendix, continuing care providers must demonstrate to the Department's satisfaction, that all of the following criteria are

met. Such evidence should be presented as part of the CON application.

a. The provider will not seek Certification in the Medical Assistance Program. (Financial feasibility of the long-term care bed component must be demonstrated without the need to rely on Medical Assistance reimbursement.)

b. There is evidence substantiating the need for the continuing care community, such as project feasibility study (demand study) or such similar documentation.

c. The nursing home beds will be restricted to use according to a sliding scale for only those residents who have been admitted to the continuing care community. By year two, no more than eighty percent of the residents can be from outside the continuing care community. By year four, this percent is fifty percent; by year six, it is twenty-five percent; and by year eight, it is ten percent.

State Health Plan, Appendix 39–3A, 16 Pa.B. 2177 (June 14, 1986). See R. 1268a–69a.

First, the objector argues that the amendment was not properly enacted. However, we find that the amendment was properly promulgated and adopted. The department published notices in the Pennsylvania Bulletin that the Statewide Health Coordinating Council (SHCC) had released its proposed amendments to the SHP and that a public hearing would be held concerning the proposed amendment and its effect on CON applications filed by CCRC's. The SHCC and the Governor subsequently approved the amendments. 16 Pa.B. 2177 (June 14, 1986). The procedure fully complied with Section 201(8) of the Act, 35 P.S. § 448.201(8).

Amendment 39–3A provides that, even if there is no need for additional long-term care beds in an area, as determined under the SHP, the department may approve a CON application filed by a proposed CCRC if the applicant satisfies the three specific criteria enumerated in the amendment. The department used the criteria in evaluating the applicant's proposal and determined that it satisfied the requirements.

■ As indicated in the amendment set out above, the first criterion is that the applicant agree not to participate in the Medical Assistance Program and that the project be economically feasible. The record shows that the applicant has agreed not to seek certification in the Medical Assistance Program. See R. 827a. In addition, the board found that the proposed CCRC project would be financially feasible without reliance on Medical Assistance Program funds.

The objector argues that the feasibility of the long term care component of the CCRC is questionable and, accordingly, that the applicant has failed to satisfy this criteria. However, to evaluate the feasibility of the entire project, the department properly examined all of the components of the proposed CCRC, rather than the long term care facility alone. The long term care component of the facility is dependent upon the CCRC. Together, the two projects, which encompass the entire CCRC, are economically feasible without reliance upon Medical Assistance funds.

The department found that the costs of the proposed facility is comparable to the costs of similar projects and that the project will be financed through a bond issue and an equity contribution provided by Messiah College. Thus, the board's finding with respect to this criteria is based on substantial evidence.

■ The second factor the department must consider is the need for the proposed project. Under the amendment, the department is not required to use the SHP criteria for determining need. However, the department is still required to evaluate the proposal in accordance with the twenty criteria for determining need found in Section 707(a)(1)–(20) of the Act, 35 P.S. § 448.707(a)(1)–(20). The Act also provides that evidence substantiating the need for the continuing care community, such as a project feasibility study or such similar documentation, may also be used.

The record reveals that, although the population in the United States is expected to increase by one-third between 1982 and 2050, the number of persons over fifty-five years

of age is expected to grow at the rate of 113%. In addition, from 1970 to 1980, the number of persons over sixty-five years of age increased by 20.3% and the number of Cumberland County residents in that age range increased thirty-nine percent during that period. Additional evidence of need can be found at R. 69a–86a, R. 95a–99a, R. 445–448, R. 603a, R. 746a, and R. 839a–830a.

We have thoroughly reviewed the record in this case, including the diverse documentation submitted both in support of and in opposition to the applicant's proposal, and conclude that substantial evidence supports the department's finding that there is a need for the proposed facility.

■ Finally, the applicant must establish that its beds will be restricted to use according to a sliding scale, which requires that a higher percentage of beds be used by CCRC residents each year for five years. According to the applicant, by year two, only forty-one percent of its beds will be used by non-CCRC residents. The amendment requires that no more than eighty percent be non-residents. Evidence in the record indicates that by year four, only fourteen percent of the beds will be used by non-residents. The amendment allows up to fifty percent of the beds to be used by non-residents that year. See R. 828a, 833a and 840a. Accordingly, the applicant meets the third and final criterion required under the amendment.

■ As indicated above, in addition to the three criteria set out in the amendment, the department is required to examine twenty criteria for need, delineated by the legislature in the Act at section 707(a)(1)–(20), 35 P.S. § 448.-707(a)(1)–(20). Among those criteria which the department must examine is the relationship of the application with the applicable health systems plan and annual implementation plan, section 707(a)(1), 35 P.S. § 448.707(a)(1); whether the services are compatible with the applicant's long-range development plan, section 707(a)(2), 35 P.S. § 448.707(a)(2); whether the proposed facility is compatible with existing health care systems in the area, section 707(a)(7), 35 P.S.

§ 448.707(a)(7); whether the proposed facility will have appropriate ancillary and support services available to it, section 707(a)(10), 35 P.S. § 448.707(a)(10); factors which affect the effect of competition and the capacity of market conditions, section 707(a)(15), 35 P.S. § 448.707(a)(15); the quality of care delivered in the past by existing facilities, section 707(a)(18), 35 P.S. § 448.707(a)(18); and the contribution of the proposed facility in meeting the needs of members of medically underserved groups, Section 707(a)(19), 35 P.S. § 448.707(a)(19).

The department's consideration of these and the other factors is clearly supported by the record. The documentation in the record constitutes substantial evidence in support of the board's decision to grant the CON. Accordingly, unless we find some constitutional or prejudicial procedural error, we must affirm the board's decision to issue the CON to the applicant.

The objector argues that he was denied due process because he was not provided an ample opportunity to present his arguments to either the department or the board. Review of the record shows that the objector was provided every opportunity to present his evidence and to participate in the application process.

Finally, the objector contends that there was an improper ex parte communication between the department's secretary and two doctors who supported the application. Section 702(f)(2) of the Act, 35 P.S. § 448.702(f)(2), states that, "[n]o ex parte contact regarding the application between any employee of the department who exercises responsibilities respecting the application and the applicant, any person acting on behalf of the applicant or any person opposed to the issuance of the certificate of need shall occur *after the commencement of a hearing on the application* and before a decision is made by the department." (Emphasis added).

In this case, there was no prohibited ex parte contact between the secretary and any person acting on the appli-

cant's behalf because, as the objector concedes in his brief, the contact took place *before* the applicant submitted its application and not "after the commencement of a hearing on the application." Accordingly, we need not address the objector's argument that a departmental regulation [3] "subverts" the Act's provisions.

Having found that the department's decision is supported by substantial evidence, and having found no constitutional or prejudicial procedural error, or violation of departmental regulations, the order of the board is affirmed.

## ORDER

Now, June 7, 1991, the order of the State Health Facility Hearing Board at No. CN 87–007, dated August 29, 1989, is affirmed.

## ORDER

Now, June 7, 1991, the appeal of Grantham Woods, Inc. and Commonwealth of Pennsylvania, Department of Health, from the order of the State Health Facility Hearing Board, No. CN–87–007, dated August 29, 1989, is quashed.

SILVESTRI, Senior Judge, concurring and dissenting.

I concur with the majority that the State Health Facility Hearing Board's (board) denial of Grantham Woods, Inc. (Grantham) and the Department of Health's (department) to strike the appeal of James H. Stewart (Stewart) on the basis that he lacked standing to appeal was an interlocutory order and not appealable to this Court.

I also concur with the majority that Grantham and the department preserved the standing issue, but respectfully dissent from their holding that Stewart had standing to

---

**3.** 28 Pa.Code 401.5(g)(6)(i) provides: "A contact which is recorded as part of the official application file in accordance with paragraphs (ii) and (iv) shall not be considered an ex parte contact." The objector argues that the provision "nullifies" § 702(f)(2) of the Act.

appeal the grant of the CON by the department to Grantham; I would dismiss the appeal of Stewart.

Although I accept the procedural aspects and factual statements as set forth in the majority opinion, I add additional facts from the record during the course of this dissenting opinion.

The General Assembly enacted the Health Care Facilities Act (Act) [1] to enhance the health and welfare of Pennsylvania citizens by the orderly and economical distribution of health care resources providing for government involvement to coordinate the health care system to prevent needless duplication of services. Sections 102, 202. To that end, the General Assembly has provided, inter alia, that "No person shall offer, develop, construct or otherwise establish or undertake to establish within the State a new institutional health service without first obtaining a certificate of need from the department...." [2] Section 701(a).

Section 702(a) requires that projects for facilities, services or equipment requiring a certificate of need (CON), shall, at the earliest possible time in their planning, be submitted to the health systems agency (HSA) and the department in a letter of intent in such detail as required by regulations.

On August 1, 1985, Grantham submitted a letter of intent for a project to consist of a "proposed Retirement Center, presently called 'Grantham Woods', will be located adjacent to Messiah College. Grantham Woods plans to serve residents with four levels of care including: independent living apartments, personal care, intermediate care, and skilled nursing care." [3]

On September 13, 1985, Grantham filed an application for a CON for a 60 bed nursing facility with the department

1. 1979, July 19, P.L. 130, No. 48, § 101, et seq., *as amended;* 35 P.S. 448.101–448.712.

2. There follows a listing of what shall be included in "New institutional health services" which is not herein relevant.

3. By this letter of August 1, 1985, Grantham withdrew its letters of intent dated October 19, 1983 and August 19, 1974.

and also with Health Resources Planning & Development, Inc. (HRPD) which was the regional HSA for the project. (R. 42a) [4]

On November 13, 1985, Stewart sent a letter to HRPD with a copy to the department requesting that his appearance be entered "as an Objector" to the grant of the CON to Grantham. Stewart also requested that he be furnished with copies of any additional information Grantham files [5] and when the application for the CON is completed.[6]

Between September 13, 1985 and November 19, 1985, there were continuing exchanges of request for and supplying information between HRPD and Grantham. On November 19, 1985, HRPD notified the department of the completed CON and that "the review period will begin effective November 25, 1985." Notices pursuant to section 703(a) were published on November 25, 1985, and noticing a hearing scheduled for December 17, 1985. (R. 362a)

Section 703(a) provides that after publication of the notice of completed CON and beginning of review, "Directly affected persons may *file objections within 15 days* of such publication with the local health systems agency setting forth specifically the reasons such objections were filed." (Emphasis ours.)

On January 31, 1986, Stewart, some 60 days after the publication notices, filed a 53 paragraph document entitled "Objections To Certificate Of Need Application For Sixty Nursing Beds." (R. 394a–407a) The objections in addition to not being timely are not specific and some are clearly

---

4. The CON application with exhibits is set forth in the record at pages 43a through 227a.

5. Section 706 requires the HSA and the department during the course of review, upon request of any "person" "to set forth the status, any findings then made in the proceeding and other appropriate information requested."

6. Stewart, prior to requesting his appearance be entered, was, for some time before and at the time of his request, actively opposing Grantham's special exception application for the facility before the Upper Allen Township Zoning Hearing Board.

erroneous.[7]

The last sentence of section 703(a) provides that persons filing the objections shall be parties to the proceeding unless and until such objections are withdrawn. Assuming arguendo, Stewart is within the definition of "Directly Affected Persons," he neither timely filed objections nor did he file objections "setting forth specifically the reasons such objections were filed."

The fact that Stewart sent a letter to the department to enter his appearance as an objector on November 13, 1985 (R. 372a), two months after Grantham's filing its application for a CON and two weeks before publication of the notice of completed CON and the beginning of review, did not give party status to Stewart under any section of the Act.

Additionally, the fact that Stewart participated in the hearing before HRPD during the period of review, i.e., after November 25, 1985, did not make him a "party". Had Stewart not filed objections as required by 703(a), he was entitled to participate in the hearing before the HRPD by virtue of 703(b) which provides, "In the hearing *any person shall have the right* to be represented by counsel and to *present* oral or written *arguments* and *relevant evidence.*" (Emphasis ours.) Stewart's participation in the hearing before the HRPD consisted of two pages of testimony at R. 527a–528a.

On March 26, 1986, HRPD by letter (R. 569a) notified the department as follows:

Our review of the project is now complete, and HRPD is forwarding its recommendation that the project not be

---

7. Most of the objections consist of generalized statements of noncompliance with the law and incomplete statements of the content of the CON application. Further, Stewart states, in paragraph 53, "The application should not be deemed complete pending the outcome of the zoning proceeding." On January 9, the Zoning Hearing Board of Upper Allen Township granted Grantham's application for a special exception with conditions (R. 367a–385a) and on January 16, 1986 Grantham notified HRPD that it accepted the decision with conditions of the Zoning Hearing Board.

endorsed. Among the reasons for the recommendation is the following:

> The proposed project would not meet the needs of the residents of Cumberland County.[8]

Section 702(d) provides that the department shall consider the recommendations or objections of the HSA, herein HRPD, in reviewing the application and shall approve or disapprove the application.

On December 12, 1986,[9] the department granted Grantham's application for a CON and filed therewith written findings (R. 844a–851a) which state the basis for its decision as required by section 702(f)(1).

Section 502 gives to the board the duty, inter alia, "To hear appeals from departmental decisions on applications for certificates of need or amendments thereto."

Section 506(a) of the Act sets forth the appeal procedures, which are as follows:

1. The decision of the department on the application for a CON may be appealed.
2. The appeal must be filed within 30 days.
3. The appeal may be taken by any party or HSA who is involved in the proceeding.
4. The appeal hearing before the board shall be commenced within 30 days of the appeal.
5. The appeal hearing before the board shall be limited to issues raised by the appellant in

   (a) the specifications of objections to the decision of the department.
6. No further issues shall be raised which were not brought to the attention of the HSA or the department.

---

**8.** Simultaneously, with its recommendation HRPD issued a memorandum (R. 268a), dated March 26, 1986, in which it stated that Stewart as well as two other named persons "may be a 'party to the proceedings' on the subject project." HRPD cites no authority for its memorandum.

**9.** The letter notifying Grantham of the approval of the project and granting a CON was dated December 12, 1986, but was signed December 23, 1986, and was mailed December 24, 1986. (R. 844a–845a)

7. Nor shall the board entertain any evidence which the board is satisfied the appellant was able, by the exercise of reasonable diligence, to have submitted before the HSA and the department.

Section 506(b) states that the hearing board shall be bound by the duly promulgated regulations of the department.

Department regulation 197.33(3), 37 Pa.Code § 197.33 states:

The following persons have standing to appeal a decision of the Department which is appealable under § 197.-32(a)(1)–(3) [10] ...:

. . . . .

(3) A person who was a party before the health systems agency under section 703(a) of the act (35 P.S. § 448.701(sic))

On January 26, 1987, Stewart filed an appeal to the board from the December 12, 1986 decision of the department.

The General Assembly in the definitions section of the Act, section 103, defines a "Person" as a natural person.[11] After broadly defining "Person", the General Assembly then proceeded to restrict the term "Person" by creating a group to be known as "Affected person" and a group known as "Persons Directly Affected."

**10.** 37 Pa.Code § 197.32(a)(1)–(3) provides as follows:
§ 197.32. Appealable decisions.
(a) The following decisions of the Department may be appealed:
(1) The granting or refusal of a certificate of need or amendment thereto.
(2) The decision to require a person to obtain a certificate of need for major medical equipment or the acquisition of an existing health care facility.
(3) The denial of a request for reconsideration of the decision of the Department to grant or refuse a certificate of need.

**11.** Also included in the definition of person is "corporation (including associations, joint stock companies and insurance companies), partnership, trust, estate, association, the Commonwealth, and any local governmental unit, authority and agency thereof. The term shall include all entities owning or operating a health care facility or health maintenance organization."

The definition of "Affected persons" [12] create a group less than in the definition of "Person", but greater than the group defined in "Persons Directly Affected"; [13] however, both definitions include members of the public as follows.

"Affected person" is defined, as herein relevant, as

those members of the public who are to be served by the proposed new institutional health services, ...

"Persons Directly Affected" is defined, as herein relevant, as

members of the public who are to be served by the proposed new institutional health services, ...

"Health Services" is defined as

Clinically related (I.E., diagnostic, treatment or rehabilitative) services, including alcohol, drug abuse and mental health services.

12. "Affected person" is defined as:
A person whose proposal is being reviewed for purposes of certificate of need, the health systems agency for the health service area in which the proposed new institutional health service is to be offered or developed, health systems agencies serving contiguous health service areas, health care facilities and health maintenance organizations located in the health service area which provide institutional health services, and those members of the public who are to be served by the proposed new institutional health services and those agencies, if any, which establish rates for health care facilities and health maintenance organizations located in the health systems area in which the proposed new institutional health service is to be offered or developed.

13. "Persons Directly Affected" is defined as:
A person whose proposal for certificate of need is being reviewed, members of the public who are to be served by the proposed new institutional health services, health care facilities and health maintenance organizations located in the health service area in which the service is proposed to be offered or developed which provide services similar to the proposed services under review, and health care facilities and health maintenance organizations which prior to receipt by the agency of the proposal being reviewed have formally indicated an intention to provide such similar service in the future and those agencies, if any, which establish rates for health care facilities and health maintenance organizations located in the health systems area in which the proposed new institutional health service is to be offered or developed.

If the General Assembly intended by the quoted phrases in the foregoing definitions of "Affected person" and "Persons Directly Affected" to include any person from birth to death, at any age, who may have the potential for needing the type of "Health Services" defined therein, such meaning was accomplished in its definition of "Person." Likewise, if the General Assembly meant to include in the quoted phrases of the foregoing definitions, the entire public, it would have simply defined them as "any natural person who, at the time of the filing of a letter of intent for a CON and/or at any time in the future, may be in need of the kind of services to be offered by the proposed new institutional health services."

I believe, in view of the General Assembly's knowledge in the use of words and phrases, and consistent with the Statutory Construction Act of 1972,[14] 1 Pa.C.S. § 1921(a) [15] and § 1922(2),[16] that the above quoted phrases were meant by the General Assembly to mean "members of the public who, at the time of filing of the application for a CON, would be served with the type of services to be offered by the proposed new institutional health services facilities." This interpretation is consistent with the purposes of the Act as set forth in section 102, as follows.

The General Assembly finds that the health and welfare of Pennsylvania citizens will be enhanced by the orderly and economical distribution of health care resources to prevent needless duplication of services. Such distribution of resources will be furthered by governmental involvement to coordinate the health care system. Such a

14. 1972, Dec. 6, P.L. 1339, No. 290, § 3, 1 Pa.C.S. § 1501.

15. § 1921. Legislative intent controls
(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

16. § 1922. Presumptions in ascertaining legislative intent

.     .     .     .     .

(2) That the General Assembly intends the entire statute to be effective and certain.

system will enhance the public health and welfare by making the delivery system responsive and adequate to the needs of its citizens, and assuring that new health care services and facilities are efficiently and effectively used; that health care services and facilities continue to meet high quality standards; and, that all citizens receive humane, courteous, and dignified treatment. In developing such a coordinated health care system, it is the policy of the Commonwealth to foster responsible private operation and ownership of health care facilities, to encourage innovation and continuous development of improved methods of health care and to aid efficient and effective planning using local health systems agencies. It is the intent of the General Assembly that the Department of Health foster a sound health care system which provides for quality care at appropriate health care facilities throughout the Commonwealth.

In summary, Stewart is neither an "Affected person" nor a "Persons Directly Affected" as defined in the Act; Stewart's letter requesting to enter his appearance as an "Objector" did not give him any status under the Act; the fact that he filed some 53 objections following HRPD's publication of notice of completed CON application and beginning of review, did not give him any status under the act, since the objections were filed some 45 days beyond the required time for filing and they were without specificity; the fact that Stewart received information from HRPD and the department during the review and that he participated in the hearing before the HRPD and proceedings by the department did not give him party status since the Act specifically entitled "any person" to request information from HRPD and the department, section 706 supra, and, in the hearing, "the right to be represented by counsel and to present oral or written arguments and relevant evidence," section 703(b).

Clearly, being "involved in the proceeding" does not create party status. To acquire party status, where, as here, the hearing on the application for CON and the review

was conducted by HRPD, an HSA, one must acquire party status as set forth under section 703(a), i.e., be a "Persons Directly Affected," file objections to the completed application for a CON, the objections must be specific and the objections are not withdrawn and then participates in the proceeding.

Stewart was not a party involved in the proceeding before the HRPD, thus he lacked standing to appeal to the board from the decision of the department granting the CON to Grantham and thus lacked standing to prosecute his appeal from the board's decision to this Court.